IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WEISSHOUSE,

                    Plaintiff,                    2:12-cv-01899

                                                        **ELECTRONICALLY FILED**

     v.

MODULO CUCINE LLC; MONTE D.
STETTIN; and  MAX  CHAFIR,

                    Defendants.

## MEMORANDUM OPINION RE: DEFENDANTS' MOTION TO DISMISS (DOC. NO. 24)

### I. Introduction

Weisshouse ("Plaintiff") filed this lawsuit against Modulo Cucine, LLC ("Defendant Corporation") and Monte D. Stettin and Max Chafir ("Individual Defendants").  Plaintiff, in its Amended Complaint alleges the following: (1) Count I: Breach of Contract against Defendant Corporation; (2) Count II: Fraud against Defendant Corporation; (3) Counts III and IV: Fraud against Individual Defendants; and (4) Count V: Breach of Expressed Warranty: against all Defendants.  Doc. No. 21.  Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332.

Presently before the Court is Defendants' Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), which seeks dismissal of all claims against the Individual Defendants and Plaintiff's tort claims (Counts II, III, and IV).  After careful consideration of Defendants' Motion to Dismiss and brief in support thereof (Doc. Nos. 24 and 25), Plaintiff's Response in Opposition (Doc. Nos. 32 and 33), and Defendants' Reply thereto (Doc. No. 34) and for the following reasons, Defendants' Motion to Dismiss (Doc. No. 24) will be **GRANTED IN PART AND DENIED IN PART**.

## II. Factual Background

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, at this stage the Court accepts all of the factual allegations in the Complaint as true and all reasonable inferences are drawn in Plaintiff's favor.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Taking the Plaintiff's factual allegations as true solely for the purposes of this Memorandum Opinion, the facts of this case are as follows:

Plaintiff is a limited partnership that is owned and operated by Weiss Family Holdings LLC, with a principal place of business in Pittsburgh, Pennsylvania.  Doc. No. 21, ¶ 1. Defendant Corporation is incorporated in the State of California, with a principal place of business in Hollywood, California.  Id. at ¶ 2.  Defendants are both officers/directors of Defendant Corporation, and each allegedly made "personal guarantees and representations" in their individual capacity.  Id. at ¶¶ 3, 4.  These statements were a critical factor in Plaintiff's decision to work with Individual Defendants and Defendant Corporation.  Id.

Plaintiff works directly with individuals, architects, interior designers, and construction managers to create a client's "dream home."  Doc. No. 21, ¶ 1.  An important part of this task is finding custom-made furniture and cabinetry.  Id.  Defendant Corporation provides custom-made cabinetry, and Plaintiff relied on the representations of Defendants that their "cutting edge design" and "exceptional quality" would exceed the expectations of Plaintiff and its clients. Doc. No. 21, ¶ 10.  Plaintiff placed orders for custom-made cabinetry with Defendant Corporation, and was assured that the cabinets would meet all of the specifications provided by Plaintiff.  Id. at ¶ 11.  Plaintiff was also assured that shipments would arrive in a timely fashion to avoid project delays and customer dissatisfaction.  Id.  Despite Defendants' assurances that the

2

products would not be damaged during shipment, and that any damage that occurred would be addressed in a timely fashion, Plaintiff paid additional fees for extra padding. Doc. No. 21, ¶ 12, 15. All of Plaintiff's orders originated from Pittsburgh, and all of Defendant Corporation's deliveries were shipped to Plaintiff's Pittsburgh offices. Id. at ¶ 14.

Despite Defendants' promises and Plaintiff's extra precautions, the custom-made cabinets did not meet Plaintiff's specifications, arrived without the necessary hardware or the incorrect hardware, and suffered damage during shipment. Doc. No. 21, ¶ 16. In some instances, the additional padding that Plaintiff purchased was not included within the shipment. Id. at ¶ 17. When Plaintiff informed Defendant Corporation of these issues, Defendant failed to address them in a timely fashion. Id. at ¶ 18. As a result, Plaintiff experienced a delay in some projects and the cancellation of others. Id. at ¶ 19. Plaintiff also lost clientele due to customer dissatisfaction. Id. Due to Defendants' "errors, omissions, misrepresentations, and negligence," Plaintiff was required to return money to customers and/or offer significant reductions in their fees. Doc. No. 21, ¶¶ 19-20.

### III. Standard of Review

#### A. Federal Rule of Civil Procedure 12(b)(2)

When replying to a motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, Plaintiff bears the burden of proving, by a preponderance of the evidence, facts adequate enough to establish personal jurisdiction over Defendant(s), by producing sufficient evidence. *Castapheny v. W. Virginia State Police*, 2010 WL 1901817, at *3 (W.D. Pa. May 11, 2010) (Lenihan, J.). To determine whether personal jurisdiction can be exercised over a nonresident Defendant, a District Court must begin with Rule 4(k) of the Federal Rules of Civil

Procedure. *Id*. at \*4 (citing *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd*., 566 F.3d 94, 102 (3d Cir. 2009)). Rule 4(k) of the Fed. R. Civ. P. permits personal jurisdiction over a nonresident Defendant to the level permissible under the state law in which the District Court sits. *Id*. (citing *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)). Pennsylvania's long-arm statute, codified at 42 Pa. Cons. Stat. § 5322(b), authorizes Pennsylvania Courts to exercise personal jurisdiction to the extent the United States Constitution allows. *Id*. at \*4. Therefore, jurisdiction can be exercised over a nonresident Defendant so long as the requirements of the Due Process Clause of the United States Constitution have been fulfilled. *Id*.

To satisfy due process requirements, Defendant must have certain minimum contacts with the forum state such that the progression of the suit will not offend 'traditional notions of fair play and substantial justice." *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The minimum contacts cannot be created by Plaintiff, but Defendant must purposefully avail itself of the privileges and protection of the laws when conducting business in the forum state. *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Personal jurisdiction exists in one of two ways: specific jurisdiction and general jurisdiction. *Id*. There are three requirements for specific jurisdiction: (1) Defendant must have purposefully directed its activities toward the forum state; (2) the current suit must arise out of those activities; and (3) the progression of the suit will not offend the notions of fair play and substantial justice. *Id*. at \*5. (citing *Burger King*, 471 U.S. at 472; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Int'l Shoe*, 326 U.S. at 316). To establish general jurisdiction, it must be shown that Defendant had "continuous and systematic" contacts

with Pennsylvania. *Id.* at *6. The "continuous and systematic" contacts with the forum state

must be substantial. *Id.* (citing *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819

F.2d 434, 437 (3d Cir. 1987)).

To establish the reasonableness of exercising jurisdiction the Court may evaluate five

factors: (1) the burden on Defendant if required to litigate in the forum state; (2) the forum

state's interest in providing relief; (3) Plaintiff's interest in receiving complete relief; (4) the

interstate judicial system's interest in the most efficient resolution; and (5) the shared interest of

the several states in advancing social policies. *Burger King*, 471 U.S. at 476-77 (citing *World-*

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 at 292 (1980)).

### B. Federal Rule of Civil Procedure 12(b)(6)

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed

to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and

plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and

*Ashcroft v. Iqbal*, 562 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit

explained that a District Court must undertake the following three steps to determine the

sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state
> a claim." Second, the court should identify allegations that, "because they are
> no more than conclusions, are not entitled to the assumption of truth." Third,
> "whe[n] there are well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to an entitlement

for relief." This means that our inquiry is normally broken into three parts:
(1) identifying the elements of the claim, (2) reviewing the Complaint to strike
conclusory allegations, and then (3) looking at the well-pleaded components
of the Complaint and evaluating whether all of the elements identified in part
one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 562 U.S. at 672).

The third step of the sequential evaluation requires this Court to consider the specific

nature of the claims presented and to determine whether the facts pled to substantiate the claims

are sufficient to show a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203,

210 (3d Cir. 2009). "While legal conclusions can provide the framework of a Complaint, they

must be supported by factual allegations." *Id.* at 210-11; *see also Malleus,* 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or

improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits.

*Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a

reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556.

Generally speaking, a Complaint that provides adequate facts to establish "how, when, and

where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers

Specialty Servs., Inc.*, 346 Fed. App'x. 774, 776 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could,

if established at trial, entitle him to relief. *Twombly*, 550 U.S. at 563 n.8.

## IV. Discussion

Defendants assert the following to support dismissal of the Individual Defendants, Counts

II-IV, and Plaintiff's claims for punitive damages, attorneys fees, and costs: (1) Plaintiff cannot

state a claim for individual relief against the officers, members, or shareholders of the corporate

entities at issue, (2) this Court lacks personal jurisdiction over Individual Defendants, (3) the Gist

of the Action Doctrine bars Plaintiff's fraud-based claims, and (4) Plaintiff has failed to state a

claim for relief or otherwise sufficiently pled recovery of punitive damages, costs, attorneys fees

or related alleged damages.  Doc. No. 24.

### A.   This Court Does Not Have Personal Jurisdiction Over the Individual Defendants

First, the Court must determine whether it has personal jurisdiction over Defendants.

This analysis begins with Rule 4(k) of the Federal Rules of Civil Procedure, which authorizes

personal jurisdiction over non-resident defendants to the extent permissible under the law of the

state where the district court sits.  *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007);

Fed.R.Civ.P. 4(k)(1).  The applicable Pennsylvania statute permits the Court to exercise personal

jurisdiction over non-resident defendants to the fullest extent allowed under the United States

Constitution.  42 Pa.C.S. § 5322(b).  In other words, the Court may assert personal jurisdiction

over the Individual Defendants as long as they have "certain minimum contacts" with

Pennsylvania such as not to "offend traditional notions of fair play and substantial justice."

*Washington*, 326 U.S. at 316.

Two types of personal jurisdiction exist: general and specific.  For the Court to exercise

general jurisdiction, defendants must have "continuous and systematic" contacts with the forum.

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).  "If a party is

subject to the general jurisdiction of a state, that party can be called to answer any claim against

her, regardless of whether the subject matter of the cause of action has any connection to the

forum."  *Farino*, 960 F.2d at 1221.  Although Plaintiff argues that the Individual Defendants

have sufficient contacts with Pennsylvania so as to allow the Court to exercise general

jurisdiction over them, it does not specify what continuous and systematic contacts exist and the Court finds that general jurisdiction is not appropriate.

Plaintiff also contends that the Individual Defendants are subject to this Court's specific personal jurisdiction. To determine whether specific personal jurisdiction exists, the Court engages in a three-part inquiry: (1) the defendant must have "purposefully directed his activities" at the forum, (2) the plaintiff's claim must "arise out of or relate to" some of those activities, and (3) the Court may consider other factors to "ensure that the assertion of jurisdiction otherwise comports with the notions of fair play and substantial justice." *Godwin*, 499 F.3d at 296 (internal citations omitted). Generally, "individuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts for that state for those acts." *McMullen v. European Adoption Consultants, Inc.*, 129 F.Supp.2d 805, 811 (W.D. Pa. 2001)(Cohill, J.)(citing *Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F.Supp. 669, 676 (E.D. Pa. 1997)). This protection is known as the Corporate Shield Doctrine.

The sole exception to this general rule applies when a "corporate agent may be held personally liable for torts committed in their corporate capacity." *Id.* In other words, only when the corporate veil has been pierced can Courts exercise specific personal jurisdiction over individuals performing in their corporate capacity.

Plaintiff argues that this Court has specific personal jurisdiction over Individual Defendants because they made "numerous contacts" with Plaintiff when soliciting their business, directed their business activities at residents and businesses of Pennsylvania, and Plaintiff's claims arise out of these activities. Doc. No. 33, 16. Acknowledging the general rule that individuals acting in their corporate capacity are not subject to the personal jurisdiction of the

Courts for the state in which they do business, Plaintiff argues that the exception outlined above applies to this case.  The Court disagrees.  For the reasons discussed below, Plaintiff has failed to establish that the Corporate Shield Doctrine does not apply to this case.  Therefore, the Court cannot assert personal jurisdiction over Individual Defendants.

### B.  The Corporate Shield Doctrine Applies to this Case

The Corporate Shield Doctrine "protects corporate officers and directors from being hauled into court and exposed to personal liability in each state that the corporation does business based solely upon their status as corporate officers and directors."  *Maleski v. DP Realty Trust*, 653 A.2d 54 (Pa. Commw. Ct. 1994).  "Piercing the corporate veil," occurs when corporate officers are personally liable for the tortious acts committed under the guise of a corporation:

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefore; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done, or participated, or cooperated therein.

*Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967); *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 88-90 (Pa. 1983).  The public policy behind this rule is that "unless jurisdiction is obtained over those corporate officers engaged in tortious conduct, they will merely repeat the conduct over and over in other corporate guises."  *Maleski*, 653 A.2d at 63.  Put another way, the corporate veil is only pierced when corporate officers are held individually liable for their tortious acts in order to prevent them from abusing the protections of the corporate shield.

There is an important distinction between piercing the corporate veil and participation theory.  "Where the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity; therefore, its acts are truly his." *Wicks, supra* at 90. Conversely, participation theory "is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer.  Instead, liability attaches where the record establishes the individual's participation in the tortious activity." *Id.* "Unless the corporate officer extends promises in his individual capacity, the participation theory does not apply in the context of an action for breach of contract." *Walsh v. Alarm Sec. Group, Inc.*, 95 F.App'x. 399, 401 (3d Cir. 2004).

Plaintiff admits that piercing the corporate veil is "an extraordinary remedy preserved for cases involving exceptional circumstances."  Doc. No. 33, 11-12.  Still, Plaintiff argues that Defendants' actions pierced the corporate veil and implicated the participation theory, thereby allowing the Court to hold Defendants individually liable.  Doc. No. 33, 12-13.  The only support for this proposition is Plaintiff's conclusory statements that Individual Defendants made "personal guarantees and representations" throughout the course of their business relationship. Doc. No. 33, 18.  Plaintiff has failed to show that Individual Defendants' actions were anything outside of their duties as officers of Defendant Corporation.  The Court does not believe that discovery is likely to reveal any evidence that would support a finding of liability against either Individual Defendant.

Further, as will be discussed below, the Court finds that the crux of Plaintiff's case is not tortious conduct by either the Corporate or Individual Defendants, but rather, a contractual

dispute.  As such, there is not a sufficient basis to hold the Individual Defendants liable for actions that were undertaken as agents of their employer during contractual discussions.

In sum, because no "exceptional circumstances" justify piercing the corporate veil, and because there are not sufficient facts to apply the participation theory, the Corporate Shield Doctrine applies and the Individual Defendants will be dismissed from this case.

## C.  The Gist of the Action Doctrine Bars Counts II, III and IV

Defendants contend that Counts II, III, and IV should be dismissed pursuant to the Gist of the Action Doctrine because they are, in essence, contract claims restructured as tort claims, rather than true tort claims.

The Gist of the Action defense applies when all tort claims arise from, are related to, or are inextricably interwoven with a breach of contract claim.  Although this defense has not been addressed by the Supreme Court of Pennsylvania, it was first recognized by the Superior Court of Pennsylvania in *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. 1992) (superseded on other grounds by Pa. R. App. P. 341).  As described by the United States Court of Appeals for the Third Circuit:

> Under [Pennsylvania's] Gist of the Action test:
>
> To be construed as a tort action, the [tortious] wrong ascribed to the defendant must be the gist of the action with the contract being collateral . . . [T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus.

*Bohler-Uddeholm Am. Inc. v. Ellwood Group Inc.*, 247 F.3d 79, 104 (3d Cir. 2001)(citations omitted).  In other words, a dispute should be limited to a contract claim when "the parties'

obligations are defined by the terms of the contracts, and not by the larger social policies

embodied in the law of torts." *Bash,* 601 A.2d at 830.

The Gist of the Action Doctrine was first applied in the context of fraud by the Superior

Court of Pennsylvania in *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa. Super.

2002).  In *eToll*, the Superior Court of Pennsylvania stated:

> [Pennsylvania] courts have held that the doctrine bars tort claims: (1) "arising
> solely from a contract between the parties" (*Galdieri[v. Monsanto Co.*, 2002 U.S.
> Dist. Lexis, 11391 at *33, 2002 WL 31991106 (E.D.Pa.2001)]; (2) where "the
> duties allegedly breached were created and grounded in the contract itself"
> (*Werner Kamman [Maschinenfabrick GmbH. V. Max Levy Autograph, Inc.*, 2002
> WL 126634 at **6-7 (E.D.Pa.2002)]; (3) where "the liability stems from a
> contract" (*Asbury [Auto. Group LLC v. Chrysler Ins. Co.*, 2002 WL 15925 at *3,
> (E.D.Pa.2002)]; or (4) where the tort claim "essentially duplicates a breach of
> contract claim or the success of which is wholly dependent on the terms of a
> contract." (*Polymer Dynamics[, Inc. v. Bayer Corp.*, 2000 WL 1146622 at *6
> (E.D.Pa.2000)].

*eToll*, 811 A.2d at 19-20.  This Court has also applied the Gist of the Action Doctrine to a fraud

claim.  *See Onconome, Inc.v. Univ. of Pittsburgh*, 2009 U.S. Dist. LEXIS 117451 (W.D. Pa.

2009) (Schwab, J.).  Pennsylvania courts are generally cautious about permitting tort recovery on

contractual breaches.  *Glazer v. Chandler*, 200 A.2d 416, 418 (Pa. 1964).  "The gist of the action

defense forecloses a party's pursuit of a trespass (tort) action for mere breach of contractual

duties, in the absence of any separate or independent event giving rise to the tort." *Onconome,*

*supra* at *31 (citing *Air Prods. and Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F.Supp.2d 329,

340 (E.D. Pa. 2003)).

It is clear from Plaintiff's Amended Complaint and Response that Counts II, III, and IV

are inextricably interwoven with Plaintiff's breach of contract claim (Count I).  To support these

tort claims, Plaintiff capitalizes on the "personal guarantees and representations" made by

Individual Defendants when soliciting Plaintiff's business, as well as the "conversations and discussions concerning the placement of orders" by Plaintiff.  Doc. No. 33, 18.  However, all of Defendants' obligations arose from the contract between the parties.  Any conversations that occurred, did so because of an existing and ongoing contractual relationship.  Claims that the Individual Defendants knew of previous problems with other orders, but failed to inform Plaintiff, does not support a separate tort cause of action.  Without the parties' contractual relationship, none of the alleged fraudulent misrepresentations would have occurred.  Therefore, Plaintiff's claims regarding fraud are tort claims that "essentially duplicate[] a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *eToll, supra* at 19.  Thus, the Gist of the Action Doctrine bars Plaintiff's tort-based claims in Counts II, III and IV of the Amended Complaint, and such counts will be dismissed.

### D.  Plaintiff's Claims for Punitive Damages, Attorneys Fees, or Costs

Defendants contend that Plaintiff cannot state a claim for punitive damages, costs, attorneys fees or related alleged damages as contained within the Amended Complaint.  Doc. No. 25, 14.  The Court finds that it would be premature to dismiss Plaintiff's claims for attorneys fees and costs at this stage of the litigation.

As to Plaintiff's claim for punitive damages, "[P]unitive damages are not available for breach of contract [in Pennsylvania.]" *Velocity Int'l, Inc. v. Celerity Healthcare Solutions, Inc.*, 2009 WL 1616522, *8 (W.D. Pa. June 9, 2009) (Standish, J.); *McShea v. City of Phila.*, 995 A.2d 334, 340 n.5 (Pa. 2010) (citing *Ash v. Continental Insurance Company,* 932 A.2d 877, 881 (Pa. 2007)).

Therefore, because Plaintiff's tort claims will be dismissed pursuant to the Gist of the Action Doctrine and the remaining claims are contractual, Plaintiff's claim for punitive damages will be dismissed.[1]

## V. Conclusion

Plaintiff, in its Amended Complaint, has not pled sufficient facts that would allow the Court to exercise personal jurisdiction over the Individual Defendants or entitle it to relief against the Individual Defendants.  Further, Plaintiff's tort-based claims are bared by the Gist of the Action Doctrine because any allegations of tortious conduct are inextricably linked to the contractual relationship between Plaintiff and Defendant Corporation.  This streamlined case will proceed on the basis of the parties' dispute, a contractual relationship between a customer and its supplier.

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 24) will be **GRANTED IN PART AND DENIED IN PART**.

An appropriate Order follows.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties

---

[1] *See Burke v. Glanton*, 2012 WL 5468932, * 4 n. 3 (W.D. Pa. Nov. 9, 2012) (Schwab, J.)